IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IRA LEE CARNLEY,
      Plaintiff,

vs.                               Case No. 5:07cv155/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.     PROCEDURAL HISTORY

      This suit involves Plaintiff's application for SSI, filed on February 28, 2004 (Tr. 22, 68–70).[1] The application was denied initially and on reconsideration (Tr. 28–33).  On October 25, 2006,

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on October 5, 2007 (*see* Docs. 14, 15).

following a hearing, an administrative law judge (ALJ) rendered a decision in which she found that Plaintiff was not eligible for Social Security benefits (Tr. 22–27).  On May 11, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 7–10).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## II.     FINDINGS OF THE ALJ

On October 25, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 22–27):

1)   Plaintiff has not engaged in substantial gainful activity at anytime since the date he filed his application for benefits (20 C.F.R. §§ 416.920(b) and 416.971 *et seq.*).

2)   Plaintiff has the following severe impairments: mild lumbar degenerative disc disease and spurring (20 C.F.R. § 416.920(c)).

3)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4)   Plaintiff has the residual functional capacity (RFC) to:  lift or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis, and to stand, walk, or sit (with normal breaks) for a total of up to six hours in an eight-hour workday.

5)   Plaintiff is capable of performing his past relevant work as a truck driver.  This work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 416.965).

6)   Plaintiff has not been under a "disability," as defined in the Act, at anytime through October 25, 2006, the date of the ALJ's decision (20 C.F.R. § 416.920(f)).

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A

determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.     Personal History[3]

Plaintiff was born on July 31, 1951, making him 55 years old on the date of the ALJ's decision and at the time of the Commissioner's final determination.  Plaintiff worked in the past as an over-the-road trucker/tractor-trailer driver, and he has a sixth grade education (Tr. 102, 107, 197). Plaintiff left school to work after the sixth grade and later joined the Army in 1968 where he served in the infantry and in artillery in Vietnam (Tr. 370, 496).  Plaintiff was honorably discharged in 1971 (Tr. 370).  Plaintiff reported doing no household chores, noting that they were or are performed by

---

[3]Unless otherwise noted, the information in this section is derived from Plaintiff's memorandum in support of his complaint, including Plaintiff's references to the transcript (*see* Doc. 21).

his first wife and daughter, and then by his second wife (Tr. 120–21, 169–71).  Plaintiff reported that he started having anxiety attacks in 1991, he has experienced such attacks from twice weekly to daily, and the attacks last at least thirty minutes (Tr. 123).

Plaintiff testified that he stopped working due to back pain and difficulty moving around (Tr. 500).  His last truck driving job was through a friend who sometimes called Plaintiff to fill in (Tr. 497).  Plaintiff explained that pain medication helps some, but it does not relieve his pain (Tr. 501).  Plaintiff also has a lot of heart pain (Tr. 503).  Plaintiff stated that he can sit for up to twenty minutes, and then he  has to get up due to severe back, shoulder, and left arm pain (Tr. 501).  He can stand about twenty minutes without having to hold onto anything and walk for about twenty minutes (Tr. 501–02).  Plaintiff stated that he can lift a gallon of milk, but he cannot pour it (Tr. 503).  He testified that he sleeps up to four hours nightly, but he has to nap almost every day for up to two hours (Tr. 505).

Plaintiff stated that he could not receive treatment from Life Management because he was going through a divorce, and he had transportation issues and was not able to get to his appointments (Tr. 505).  His depression and anxiety continue to be problematic (*id.*).  Plaintiff reported having anxiety attacks "all the time," possibly more than ten times a month (Tr. 506).  Plaintiff also testified that he cannot drive due to the side-effects of Lortab, which include wooziness and stomach sickness (Tr. 507).  Xanax also makes it difficult for Plaintiff to focus or think (Tr. 507–08).

Plaintiff stated that he tries to help with dishes for as long as he can stand at the sink, and he tries to help with the children as he can without lifting them (Tr. 503).  Plaintiff spends most of his time sitting on a heating pad in a reclining chair (Tr. 511).  He may watch the children play outside for a while, but he also watches lots of movies with them (*id.*).  If Plaintiff's wife is working, her mother or sister, or Plaintiff's oldest daughter will come over to help if there is any problem because Plaintiff has difficulty lifting the children and changing their diapers (Tr. 511–12).  Finally, Plaintiff testified that when he was a truck driver, he did not have to load or unload the truck and did not do any significant lifting (Tr. 514).

A vocational expert (VE) testified at Plaintiff's hearing, noting that Plaintiff's past relevant work as generally performed is at the medium level of exertion and semiskilled, but as actually performed, based on Plaintiff's testimony, it was light duty (Tr. 515).  The VE also noted, however,

that other evidence of record indicated that at times Plaintiff performed the work at up to a very heavy level of exertion (*id.*).  According to the VE, Plaintiff has no skills that would be transferable to a sedentary job (Tr. 516).

       B.     Relevant Medical History[4]

           1.     Physical

Plaintiff has a long history of lower back pain.  Magnetic resonance imaging (MRI) of the lumbar spine in February 1999 indicated a small bulge at L5–S1 which was not encroaching on any significant neural structure.  These results were deemed unchanged from a July 1998 study (Tr. 268–80).

In November 2001, Plaintiff underwent a consultative examination by William Guy, M.D. Plaintiff complained of hypertension, obstructive sleep apnea, and long-term chronic lower back pain.  Dr. Guy reviewed a report of Plaintiff's sleep study, which indicated minimal obstructive sleep apnea.  On examination, Plaintiff's weight was 231 pounds, his height was 69 inches, and his blood pressure was 144/92.  Plaintiff's gait appeared antalgic, although he had good range of motion and 5/5 strength in all four extremities.  Nerves and sensation were intact, and straight leg raising was negative (Tr. 281–90).

Progress notes from the Jackson County Health Department indicate that Plaintiff was seen intermittently between January 2002 and May 2004 for complaints of chronic lower back pain and recurrent bronchitis or upper respiratory infections (Tr. 420–26A).

Plaintiff was seen in the emergency room of the Southeast Alabama Medical Center in January 2004, complaining of chest pain.  The record reflects that Plaintiff had continued to work until December 2003.  He reportedly had a history of anxiety attacks and had been out of Xanax for the past two months (Tr. 427–74).   Plaintiff was hospitalized for two days for evaluation of chest pain, which was determined to be secondary to a Helicobacter infection.  Additional diagnoses included peptic ulcer disease, hiatal hernia, non-critical coronary artery disease, tobacco abuse, obesity, hypertension, and depression (*see* Tr. 299–340).  Plaintiff returned to the hospital for three days in February 2004 for further evaluation of complaints of chest pain.  An echocardiogram was

---

[4]Unless otherwise noted, the information in this section is derived from the opinion of ALJ (*see* Tr. 22–27).

normal, and nuclear stress testing showed no signs of ischemia or infarction.  Left ventricular functioning was normal.  The etiology of Plaintiff's symptoms was unclear; however, they were deemed to be non-cardiac.  During this hospitalization, x-rays of the chest and of the cervical spine were negative, and x-rays of the lumbar and thoracic spine showed mild spurring (Tr. 341–58).

In July 2004, Plaintiff underwent a consultative examination by Sam Banner, M.D..  Plaintiff complained of chronic lower back pain, coronary artery disease, obstructive sleep apnea, and depression.  Plaintiff weighed 223 pounds, his blood pressure was 137/91, and his chest was clear.  Gross and fine manipulation were intact.  Range of motion in the spine was reduced, and Plaintiff's gait was marked by short choppy steps.  He had 5/5 strength in the upper extremities and 4/5 strength in the lower extremities (Tr. 365–69).

Plaintiff was seen in the emergency room in September 2005, complaining of back pain and chest pain.  X-rays of the chest were negative (Tr. 427–74).  Additionally, progress notes from the Florida Department of Health indicate that Plaintiff complained in July 2006 of one week of lower back pain and left leg pain after pulling weeds.  He also reported no improvements in his depression with the use of medication (Tr. 475).

In August 2006, Plaintiff was referred to Jirayos Chintanadilok, M.D., for evaluation of chronic obstructive pulmonary disease and obstructive sleep apnea.  Plaintiff complained of daytime fatigue, chest pain, lower back pain, and depression.  On examination, his blood pressure was 130/84, and he weighed 237 pounds.  Plaintiff had no rhonchi wheezes, and his hypertension was deemed benign.  A sleep study was scheduled  (Tr. 476–78).

2.      Mental

In June 2004, Plaintiff was evaluated at the Life Management Center, where he reported smoking one and a half packs of cigarettes per day and drinking about twelve alcoholic beverages per week.  He was diagnosed with depression and assigned a global assessment of functioning (GAF) score of 50.[5]

---

[5]Global assessment of functioning is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994).  It may be expressed as a numerical score.  Id. at 32.  A score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Id.

In July 2004, Plaintiff underwent a consultative examination by Lawrence Annis, Ph.D.. Plaintiff complained of chronic pain and difficulty getting around. He described a childhood history that included physical beatings by his father and molestation by an uncle. On clinical examination, Plaintiff was polite and cooperative. He was observed to move slowly and somewhat stiffly. Thought processes and concentration were intact, although Plaintiff seemed anxious and preoccupied with his health and financial concerns. Dr. Annis diagnosed a major depressive disorder and pain disorder, and he concluded that Plaintiff would work better with things than with people and that he should avoid occupations requiring technical precision, the operation of machinery, or contact with dangerous substances (Tr. 370–73).

C.      Other Information Within Plaintiff's Claim File

J. Patrick Neal, M.D., a Board Certified General Surgeon, completed a Physical RFC Assessment on December 12, 2001 (Tr. 291–98). He opined that Plaintiff was able to frequently lift or carry twenty-five pounds and occasionally lift or carry fifty pounds. He could stand, walk or sit six hours in an eight-hour workday (Tr. 292). Plaintiff's ability to push or pull was unlimited (*id.*). He could occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps or stairs. Plaintiff could never balance, but he could occasionally stoop, kneel, crouch, and crawl (Tr. 293). Additionally, Plaintiff was to avoid concentrated exposure to certain environmental hazards, but he has no manipulative, visual, or communicative limitations (Tr. 294–95).

James J. Green, M.D., a Certified Public Health physician completed a Physical RFC Assessment on July 26, 2004 (Tr. 374–81). According to Dr. Green's estimations, Plaintiff was able to lift or carry fifty pounds occasionally and twenty-five pounds frequently, and he could sit, stand, or walk for six hours in an eight-hour workday (Tr. 375). His ability to push or pull was unlimited (*id.*). Plaintiff could occasionally climb, balance, stoop, kneel, crouch or crawl. No manipulative, visual, or communicative limitations were established (Tr. 376–78). Finally, Dr. Green opined that Plaintiff was to avoid concentrated exposure to hazardous machinery and heights (Tr. 378).

Mary E. Seay, M.D., completed a Physical RFC assessment on November 30, 2004 (Tr. 397–405). She opined that Plaintiff was able to frequently lift or carry twenty-five pounds and occasionally lift or carry fifty pounds. He could stand, walk or sit six hours in an eight-hour

workday (Tr. 398).  His ability to push or pull was unlimited (*id.*).  Plaintiff could occasionally stoop, and frequently climb, balance, kneel, crouch, and crawl.  No manipulative, visual, communicative or environmental limitations were established (Tr. 399–01).

An agency psychologist completed a Psychiatric Review Technique form (PRTF) on August 25, 2004 (Tr. 382–96).  He assessed Plaintiff with adjustment disorder, mixed, with emotional features, which he deemed to be "non-severe" and causing no functional limitations (*see* Tr. 382, 385, 392).  He noted that Plaintiff's alleged disability is based primarily on medical issues (Tr. 392).

A second PRTF was completed on December 7, 2004 (Tr. 406–19).  The agency psychologist opined that Plaintiff suffers from non-severe depression, not otherwise specified (Tr. 406, 409).  As a result, Plaintiff has "no" or at most only "mild" functional limitations (*see* Tr. 416).

V.     DISCUSSION

Plaintiff raises several issues on appeal (*see* Doc. 21).  Plaintiff first contends that the ALJ erred in failing to find his mental impairments severe and in failing to incorporate Plaintiff's mental limitations into the RFC finding.  Next, Plaintiff contends that the ALJ erred in evaluating his subjective complaints.  Finally, Plaintiff asserts the ALJ erred in finding that he could return to his past relevant work.

A.     Severity of Plaintiff's Mental Impairments

Plaintiff contends that the ALJ erred in concurring with the opinions of the (non-examining) agency psychologists, each of whom found that Plaintiff had no severe mental impairment(s).  Specifically, Plaintiff alleges this was error because the opinions conflicted with those of Dr. Annis, a one-time consultative examiner, as well as with the records from Life Management and the Jackson County Department of Health.

At step two of the sequential evaluation process, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his physical or mental ability to perform "basic work activities."  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a).  Basic work activities include: <u>physical functions</u> such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, and capacities for seeing, hearing, and speaking; as well as <u>mental functions</u> such as understanding, carrying out, and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and

dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").  Although the claimant carries the burden at step two, the burden is mild.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ( "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").  A claimant need only show that his "impairment is not so slight and its effect is not so minimal."  *Id.*

   1. Dr. Annis

   Initially, it is important to note that although Dr. Annis and others diagnosed Plaintiff with depression, a diagnosis alone does not equate to (or compel) a finding that Plaintiff's depression is severe.  *See, e.g.*,  Salles v. Comm'r of Social Security, 229 Fed. Appx. 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two).  Plaintiff must present evidence demonstrating that the depression significantly limited his ability to do basic work activities or impaired his capacity to cope with the mental demands of working.  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a).  Dr. Annis's report, however, does not constitute evidence demonstrating such limitations.

   First, although Dr. Annis opined that Plaintiff may have a somewhat reduced capacity to participate in "interactions requiring patience in difficult situations, careful attention, and protracted concentration," he also found that Plaintiff would be "generally able to interact appropriately with people he does not know" (Tr. 372 (emphasis added)).  In other words, the areas where Dr. Annis found Plaintiff to be somewhat limited are areas that require a greater mental capacity than those defined in the regulations (*e.g.*, to be found severe, a mental impairment must significantly limit the ability to follow simple instructions, not difficult or protracted instructions).  Similarly, the area where Plaintiff was found to be essentially unlimited — interacting with people — supports a

finding that his depression is non-severe because it suggests that Plaintiff's ability to respond to or work with others in a work setting is not significantly limited.  Further, although Plaintiff reported to Dr. Annis that he had memory deficits, Dr. Annis noted that Plaintiff's "statements of names and contents of events are consistent, reasonable and detailed" (Tr. 372).  Likewise, Plaintiff was described by Dr. Annis as "consistently polite and cooperative," his speech was noted to be well-articulated and easily understood, and Plaintiff appeared to understand comments and questions without difficulty (Tr. 371).  These attributes further support a finding that Plaintiff has no significant limitations in his ability to perform basic work activities.

The court notes, as Plaintiff points out, that Dr. Annis further opined that Plaintiff's depression and anxiety would "impede occupational achievement" (Tr. 372).  Plaintiff contends that "this statement alone demonstrates that [Plaintiff's] mental impairments were severe" (Doc. 21 at 12).  The court cannot agree.  First, the statement is subject to different interpretations — it could mean, among other things, that Plaintiff was able to hold only menial jobs, that he would have difficulty advancing in any particular job, or that he would learn slower than others, but none of these interpretations of Dr. Annis's statement compel a finding of "severity," as that term is defined in the Regulations.  Second, the issue of whether Plaintiff's depression is severe or non-severe is reserved to the Commissioner.  *See* Title 20 C.F.R. §§ 404.1527(e)(2) and (3).  To conclude that Dr. Annis's statement alone establishes "severity," would require this court to guess at what Dr. Annis actually meant or to credit Dr. Annis not only with knowledge of Plaintiff's mental condition, but also with an understanding of the nuances of how the regulations analyze mental limitations.

Moreover, Dr. Annis further stated that "if [Plaintiff's] physical condition permits work," Plaintiff would need more encouragement than most people "when encountering work difficulties or social challenges," Plaintiff would do better working with things as opposed to people, and Plaintiff should avoid occupations requiring technical precision, driving, operating machinery, or contact with dangerous substances (Tr. 372–73 (emphasis added)).  Thus, although Dr. Annis found that occupational achievement would be impeded, he did not opine that Plaintiff was incapable of work or significantly limited due to a mental disability.  He simply noted that if Plaintiff's physical condition permitted work, accommodations for his mental limitations should be made (such as working with "things" instead of people).  The ALJ generally did not fail to acknowledge these

opinions.  For example, the ALJ specifically noted Dr. Annis's diagnosis of depression, his belief that Plaintiff would work better with "things," and his opinion that Plaintiff would need to avoid occupations requiring technical precision or contact with dangerous substances (Tr. 25).  The ALJ nevertheless found that Plaintiff's depression was non-severe.

Based on the foregoing, the undersigned is not convinced that the ALJ's finding that Plaintiff's depression was non-severe is <u>necessarily</u> inconsistent with Dr. Annis's opinions, as his opinions do not clearly establish that Plaintiff's depression was anything more that a slight abnormality with such a minimal effect that it would not be expected to interfere with Plaintiff's ability to work.  Moreover, unlike Dr. Annis, the agency psychologists who rendered opinions provided opinions regarding the precise issue of whether Plaintiff's mental impairments were severe, <u>and</u> their opinions were based on the definition of severity as found in the Regulations (*see* Tr. 370–73, 382–96, 406–19).

Nevertheless, to the extent Dr. Annis's report can be construed as an opinion that Plaintiff's depression was severe, in concluding otherwise the ALJ noted that "the record includes a diagnosis of depression with the intermittent use of medications; however, [Plaintiff] has not pursued ongoing treatment and there is no evidence of significant limitations related to this impairment" (Tr. 26).  Thus, the issue is whether the ALJ's statement is supported by the record.[6]

2.     Jackson County Health Department (JCHD)

The first relevant evidence regarding Plaintiff's mental health is from the JCHD, which covers the period from January 18, 2002 to May 13, 2004, and from July 20, 2006 to August 3, 2006 (Tr. 420–26A, 475).[7]  The records reflect primary complaints of back pain and secondary complaints of anxiety or depression.  For example, a note dated January 18, 2002, reflects that Plaintiff

---

[6]As has been made clear, Dr. Annis examined Plaintiff on only one occasion, in July 2004, and he provided no treatment prior to or after the examination.  The court must therefore look to records from other sources to determine whether Plaintiff indeed failed to "pursue ongoing treatment" as stated by the ALJ.

[7]The file contains other records from the the JCHD, dated March 25, 1996 to October 29, 2001 (*see* Tr. 218–45), but they are only of marginal relevance.  First, Plaintiff admits that he was able to work as a truck driver through December 20, 2003, which is the date he alleges an onset of disability (Tr. 493).  Second, the records reflect that Plaintiff's depression was controlled on Zoloft (*see, e.g.*, Tr. 229 (notation dated July 31, 1997, specifically indicating that Plaintiff's "Depression [was] controlled on Zoloft")).  "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."  <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted).  Thus, in this report and recommendation the undersigned has focused on more recent medical records.

Case No. 5:07cv155/RS/EMT

presented with complaints of severe back pain and stated that he wanted to work, but he could not because of "so much pain & in a way Anxiety and Depression because of the whole situation" (Tr. 426 (emphasis added)).   Despite Plaintiff's report of some anxiety and depression, however, treatment relating only to his physical condition was recommended at that time (*see* Tr. 426 (ordering a CT scan in January 2002 and providing pain medication); *see also* Tr. 421, 424, 475 (Plaintiff's main complaints in July 2003, March 2004, and July 2006 concerned his physical condition)).   Moreover, the records reflect that Plaintiff was not referred to Life Management for mental health treatment until May 13, 2004, which suggests that Plaintiff's condition did not warrant an earlier referral or that it had been controlled by medication (*see* Tr. 421).

3.      Life Management (LM)

Plaintiff first appeared at LM on June 25, 2004, following a referral from the JCHD (Tr. 359, 372).   Plaintiff reported that he had "applied for disability due to multiple health [issues] and inability to drive a truck" (Tr. 362).   A licensed mental health counselor assessed Plaintiff with major depressive disorder, assigned a GAF score of 50, and advised Plaintiff to return on July 9, 2004 (Tr. 363).   However, there is no evidence that Plaintiff returned as instructed.[8]

Thus, the record supports the ALJ's finding that Plaintiff failed to pursue ongoing mental health treatment.   Moreover, a claimant's failure to seek treatment is a proper factor for the ALJ to consider.   *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing).   Furthermore, absence of treatment indicates that a mental impairment is non-severe.   *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992).   Accordingly, the ALJ did not err in concluding that Plaintiff failed to pursue

---

[8]Although the index of exhibits in this case suggests that Plaintiff was seen by LM on October 25, 2004 (*see* Tr. 4), this seems to be a scrivener's error.   It appears that this date was obtained from the first page of the LM record, as the "6" on that page, indicating the month of June, looks like a "10," indicating the month of October  (i.e., the date looks like "10-24-04" instead of "6-25-04") (*see* Tr. 359).   The other records make it clear, however, that the appointment was on June 25, 2004, and there are no records from LM from October 2004 (*see, e.g.*, Tr. 360, 364).

ongoing mental health treatment, and correspondingly, did not err in finding Plaintiff's mental impairments non-severe.[9]

As a final remark on this issue, the court notes Plaintiff's contention that it was improper for the ALJ to consider Plaintiff's lack of treatment at step two, asserting that the lack of treatment should only be considered in evaluating a claimant's credibility.  In support, Plaintiff cites Social Security Regulation (SSR) 96-7p, a Ninth Circuit case criticizing the practice, and a Sixth Circuit case noting that failure to seek mental health treatment "may be" the result of mental illness rather than evidence that the mental impairment is non-severe (Doc. 21 at 14–15).  However, the undersigned finds that an ALJ is permitted to consider a claimant's lack of treatment at step two. First, SSR 96-7p addresses consideration of this factor in assessing a claimant's credibility, but it does not state that the factor cannot be considered at step two.  Second, the cases cited by Plaintiff, while not binding on this court, are nevertheless distinguishable.  In Regennitter v. Comm'r. of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999), the court found that the ALJ erred in considering a lack of treatment where the claimant could not afford treatment, and in Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989), although the court commented that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," the practice was merely "questioned," not forbidden, and the claimant in Blankenship had been diagnosed with mental impairments (e.g., Schizophrenia) that were clearly more severe than Plaintiff's, and unlike here, arguably affected his capacity to exercise sound judgment regarding treatment.  Cf. Williams, 960 F.2d at 89 (considering at step two claimant's failure to seek treatment for anxiety).

B.      Failure to Include Mental Limitations in Residual Functional Capacity Finding

---

[9]Plaintiff makes much of the fact that he was assessed at LM with a GAF score of 50 (see Doc. 21 at 13), which suggests serious symptoms, but the GAF score is not binding on the Commissioner.  The GAF scale is intended for use by practitioners in making treatment decisions, see DSM-IV-TR at 32–33, and neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score.  In fact, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." See 65 Fed. Reg. 50746–01, 50764–65, 2000 WL 1173632 (August 21, 2000).  Moreover, the GAF was assessed by a mental health counselor, who is not considered by the Commissioner to be an "acceptable medical source." See 20 C.F.R. § 404.1513.

Plaintiff contends the ALJ erred in determining Plaintiff's RFC because she included no mental limitations, and she failed to explain why none were included (*see* Tr. 26).

RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.  *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite his limitations.  Although the RFC determination is a medical question, it is not based only on "medical" evidence, i.e., evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess RFC on the basis of all the relevant, credible evidence of record.  *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Dykes v. Apfel, 223 F.3d 865, 866–67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding).  *See also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity."); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Here, in determining Plaintiff's RFC, the ALJ made no mention whatsoever of any mental limitations — none are included, and no obvious explanation is provided for their exclusion (*see* Tr. 26, ¶ 4).[10]  The undesigned concludes that the ALJ erred in this regard.

_____

[10]As previously discussed, earlier in the ALJ's opinion she stated that "the record includes a diagnosis of depression with the intermittent use of medications; however, [Plaintiff] has not pursued ongoing treatment and there is no evidence of significant limitations related to this impairment," but this statement was made in the context of finding Plaintiff's depression non-severe (it is contained within the ALJ's step two analysis (*see* Tr. 24–26)), not in determining Plaintiff's RFC or finding that he could return to his past work as a truck driver.  Indeed, in making this statement, the ALJ did not even indicate that she was specifically rejecting Dr. Annis's opinions, as she merely referred to diagnoses in "the record," but the record contains diagnoses from several different sources.  Although the Commissioner may assert that the ALJ's earlier statement equally justifies her determinations at later steps of the sequential evaluation, the court declines to interpret her opinion that way — simply put, that is not what the opinion says.  The onus is on the ALJ to provide a clear opinion.  As the undersigned has noted in other cases, the ALJ's opinion should reflect an accurate and logical bridge between the evidence and the result.  *See* Green v. Shalala, 51 F.3d 96, 100–01 (7th Cir.1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994); Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir.1984); Cline v. Sullivan, 939 F.2d 560, 563–69 (8th Cir. 1991); *see also* SSR 82-62 ("The rationale for a disability decision must be

First, as noted above, the record contains evidence that Plaintiff was diagnosed by Dr. Annis and others with depression and/or anxiety, and Dr. Annis specifically stated that Plaintiff had certain mental limitations as a result thereof.  Although these diagnoses and limitations do not mandate a finding that Plaintiff's mental impairments were "severe," the ALJ was nevertheless required to consider all of Plaintiff's medically determinable impairments, "including [those] medically determinable impairments that are not severe," in determining his RFC.  20 C.F.R. § 404.1545(a)(2) (emphasis added).  Although the ALJ could have found that Plaintiff's depression and/or anxiety had no effect on Plaintiff's RFC, she should have stated this and explained why they did not.

To illustrate the problem created by the ALJ's failure to explain her findings, the court notes that the record contains Dr. Annis's opinion that, among other things, Plaintiff should avoid employment in "occupations requiring technical precision, driving, operating machinery, or contact with dangerous substances" (Tr. 372–73) (emphasis added).   In summarizing these opinions, however, the ALJ noted that Plaintiff should "avoid occupations requiring technical precision, the operation of machinery or contact with dangerous substances," but she failed to mention the restriction against occupations requiring driving (Tr. 25).  The ALJ then determined Plaintiff's RFC, which contained none of these limitations, and ultimately concluded that Plaintiff could return to his previous work as a truck driver.  At a minimum, the ALJ should have explained why she altogether failed to include in her opinion Dr. Annis's belief that Plaintiff should not drive, or why she rendered an ultimate opinion that directly contradicted that belief.  *See* SSR 96-8p (In determining RFC, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); SSR 82-62 (In determining the ability to return to past work, "explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies.").

The ALJ's failure to include any mental limitations in the RFC, or explain why such limitations were rejected, resulted in a defective RFC and erroneous determination at step four.

---

written so that a clear picture of the case can be obtained.  The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.").  It does not in this case.

Thus, the case should be remanded for proper consideration of Plaintiff's mental impairments and any effect they may have on his RFC.

     C.    Credibility

The ALJ found that Plaintiff's "medically determinable impairment[s] could reasonably be expected to produce the alleged symptoms, but [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible" (Tr. 27).  Plaintiff contends that this finding in not supported by the record and fails to comply with the Eleventh Circuit's pain standard (Doc. 21 at 15).

As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  Wilson, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could be reasonably expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be

disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  Id.; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[11]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, 761 F.2d at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of

[11]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold
v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984).   Thus, a physician may be told by a patient that he
or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence
as a whole, including the existence of corroborating objective proof or the lack thereof, and not just
a physician's belief, is the basis for the ALJ's credibility determination.

 Here, in discounting Plaintiff's "chronic complaints of back pain," the ALJ noted that
Plaintiff  "typically has had normal strength and intact reflexes and sensation" (Tr. 27).  The ALJ
also noted that "x-rays and MRIs have revealed limited findings described as disc bulging without
encroachment and mild spurring," and further, that Plaintiff "has maintained an active lifestyle since
filing his application for benefits" (id.).

 Initially, regarding Plaintiff's physical limitations, Plaintiff has not pointed this court to any
evidence of record that would refute the ALJ's statements regarding Plaintiff's strength, reflexes,
sensation, and lack of x-rays and MRIs revealing more than limited findings, although Plaintiff notes
findings regarding reduced range of motion, a slow and antalgic gait, and stiffness (see Doc. 21 at
16).  Thus, it appears that the ALJ's statement is supported by the record.  Moreover, although not
determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical
signs and laboratory findings, or lack thereof, when determining a claimant's credibility.  See 20
C.F.R. § 404.1529(c).  Thus, the undersigned cannot conclude that the ALJ erred in this regard.

 However, the court notes that the ALJ apparently did not consider Plaintiff's allegations of
mental limitations.  Although the ALJ earlier stated that a lack of treatment indicates non-severe
depression, it is again far from clear that she relied on this same basis for discounting Plaintiff's
allegations of mental limitations, especially considering that the "lack of treatment" discussion
appears in the "step two" discussion of the ALJ's opinion (see Tr. 26, 27).  Thus, this matter should
also be clarified upon remand.  If the ALJ once again rejects Plaintiff's allegations of mental
limitations, she should specifically state that she is doing so and provide clear reasons for
discounting his allegations.  Moreover, the court notes that the ALJ failed to mention Plaintiff's
allegations regarding the side-effects of his medication, including drowsiness (from, for example,
Xanax), which would interfere with Plaintiff's ability to drive a truck (see, e.g., Tr. 372–73).  See

20 C.F.R. § 404. 1529(c)(3)(iv) (medication side-effects must be considered);  SSR 96-7p (same). This is another matter to be considered by the ALJ upon remand.[12]

Finally, it is noted that the ALJ did not indicate what evidence she relied upon in characterizing Plaintiff's lifestyle as "active" since filing his application for benefits (*see* Tr. 27). Although the ALJ noted that Plaintiff remarried and fathered three children, the record reflects that he was married in (approximately) April 2002 (*see* Tr. 488, 499), but his application was filed in 2004 (*see, e.g.*, Tr. 22).  Moreover, elsewhere in the opinion the ALJ specifically noted that Plaintiff described his daily activity as sitting in a recliner and keeping an eye on his children (Tr. 27).  Thus, it is unclear which evidence the ALJ relied upon in finding that Plaintiff led an active lifestyle. Although this omission, alone, might not warrant remand, because the case is being remanded on other grounds the ALJ should better explain this justification for discounting Plaintiff's allegations.

D.      Finding that Plaintiff Could Return to His Past Work as a Truck Driver

The undersigned has already concluded that this finding must be revisited in light of Dr. Annis's opinions that Plaintiff should not drive and the ALJ's failure to discuss the side-effects of Plaintiff's medications.  Thus, this issue need not be addressed further.

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at 1556 (remanding for additional administrative proceedings).

---

[12]The undersigned does not find remand for an award of disability benefits appropriate, because the cumulative effect of the evidence does not establish disability without any doubt.  *See* Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice — that is, to reverse and remand for additional proceedings when errors occur); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The record . . . is fully developed and there is no need to remand for additional evidence.").  In other words, even if Plaintiff's allegations regarding his mental limitations were fully accepted, the record does not conclusively establish that he would be found disabled.  For example, although Plaintiff testified at his hearing that he experienced anxiety attacks (*see* Tr. 506), the majority of his testimony concerned physical limitations.  Moreover, neither the ALJ nor Plaintiff's attorney asked the VE to consider Plaintiff's testimony regarding mental limitations in determining whether he was able to work (*see* Tr. 514–17)

Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, and that the Clerk be directed to close the file.

At Pensacola, Florida this 22nd day of July 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**